Good morning. You may be seated and welcome to the United States Court of Appeals, the Richard Chambers Courthouse. It's a pleasure to be here and to see all of you here present today. We have a number of cases that have been submitted. Let me just go through some of those, and then we have two cases in which there will be oral arguments. The first case, Hasan Abdullah Tahil v. Merrick Garland, has been submitted on the briefs. Inri Hartweis, Vitamins Online, Inc. v. Hartweis, Inc., Magelberry and Taxinos, and Greenwood, has been submitted on the brief. Guillermo Ballardo-Sandoval and Alberta Ballardo v. Merrick Garland has been submitted on the briefs. And so that brings us to our first oral argument case today, and that's Live Life Bella Vita, LLC, and Gary Dorjik and Nava Dorjik v. Cruising Yachts, Inc. and Eduardo Loiza. Counsel is ready. You may come forward. Good morning. May it please the court and counsel, my name is Marker Lovell. I represent appellants Live Life Bella Vita, LLC, and Gary and Nava Dorjik, who were the owners of the vessel involved in the incident that gives rise to this maritime limitation of liability action. And that's what we're dealing with today, and on appeal here is the district court's decision to grant the request for relief from the stay or the injunction, allowing the claimant, Eduardo Loiza, to return to state court for determination of various liability issues. And what's unique here is there are other joint tort feasers who are also named by Mr. Loiza in the limitation action as well as in the state court action and have also made cross claims for indemnity and attorney's fees and other remedies against our clients as the vessel owners to determine liability as we're dividing up the pie of liability in the case, which creates a multiple claimant situation where without adequate stipulations to protect the district court's jurisdiction to determine limitation, which means two things. A, what's the value of the vessel, and B, whether or not my clients, the owners of the vessel, had privity or knowledge of the cause of this casualty or this incident. And the court has to ensure that the district court's ability to make that decision cannot be disturbed or prejudiced by anything that happens in a parallel state court proceeding. And the best way to do that is to ensure that appropriate stipulations are executed by all of the parties because it's a multiple claimant situation. And there's really two ways to do that and three points I want to make on that point. First, this court ruled in Williams Sports Rentals earlier this year. That case has been up and down to the Ninth Circuit a couple of times. And earlier this year, it issued a ruling holding that when there is a claim for attorney's fees by one of the other tort fees, that makes the case a multiple claimant situation. And when there's a multiple claimant situation, there has to be adequate stipulations executed by all parties to ensure that the province of the district court to make the limitation decisions is adequately protected. Could I interrupt you and ask you exactly what you're asking us to decide? Absolutely. You've taken a very strong position that this is a multi-claimant situation and you don't have adequate stipulations from your perspective. Are you asking us to remand for the district court to take another run at adequate stipulations or what exactly? What we would like to see the court do is reverse to the district court because it's a multiple claimant situation and with instructions to the district court as to what the stipulations must be that must be executed by all of the parties to ensure that the limitation jurisdiction of the district court and their right to make that decision is protected. So again, forgive me for interrupting, but you're asking us to dictate what the stipulation would say? Yes. Okay. Yes. And if you're interested, I can tell you exactly what I think it should say. I'm pretty interested. Okay. I mean, I guess Louisa is proposing what he calls a simple fix and that's sort of a unilateral stipulation. Right. And the unilateral stipulation, which is what he's already been successful with in the district court and why we're here today, is wholly insufficient under any of either the majority rule, which is set forth by the 2nd, 7th, 3rd, and 5th circuits, and also Williams sports rentals now, which is the 9th circuit decision on that point. Because those are the two significant developments since the district court's decisions. Correct? Or it seems like SNK Dive had not filed their claim or its counterclaim and the Williams sports rentals case has been decided. Correct? Correct. And so in your view, that impacts the result here. Oh, absolutely. And the 100% certain thing is that attorney's fees claim makes it a multiple claimant situation. And what should the stipulation say to protect our client's limitation rights? One, the district court's exclusive jurisdiction is to determine all issues related to limitation of liability. Two, no party is going to attempt to execute any of the state court judgments or results seeking indemnity contribution from the vessel owner in state court, which happens with equitable indemnity cross claims and procedural issues like that, at any point in the limitation action because of the need for the district court to determine privity and knowledge. All parties waive the right to use decisions in the state court case that impact limitation as race, judicata, or collateral estoppel. How does two differ from three? Forgive me for interrupting. How do two and three differ? Well, I think it depends on the nature of the ruling in the state court. Your concern is that somebody's going to get a judgment in the state court and seek to use it in the federal court under the doctrine of race, judicata, if I can loosely summarize. Right, right. I mean, the way I look at it, we've got two parallel cases. We've got the district court case that's over here, and we've got the state court case that's over here. And we all know if the state court case gets tried with multiple parties in a tort case like this and you're dividing up that pie of liability, without an agreement by all parties, that they'll be still bound by the district court's jurisdiction over here. There's all kinds of prejudicial things that could happen in federal court. Right, so we understand that. Forgive me for interrupting. We understand that. Yeah. I'm just trying to, because your time is ticking. Yeah. I'm just trying to figure out how did the second and third points in your preferred stipulation language differ, sir? Okay. I think it's just a difference of the nature of the ruling in the state court, whether it's simple. They're very similar. They're very similar. Okay. Race, judicata, collateral, estoppel. Issue per collusion is the issue. And then the fourth thing that I think the stipulation has to say is that the attorney's fees claim, which is acknowledged to be a separate claim, has to take precedence over Loaiza's claim. And I think those are the four points that we would ask the court to reverse and instruct the district court to include in the required stipulations. The attorney's fees has to take precedence over Loaiza's claim? Well, it's a separate claim. It's a separate claim. It's a separate claim. Right. But it's not more important. When you say take precedence. Well, we have to deal with there's going to be the limitation fund, which is the value of the vessel, and then there's the attorney's fees claim. And we have to ensure that there's separation there in the district court. But you're suggesting one takes priority, that the attorney's fees take priority. Right. Which is what Chief Judge McGee is asking you to explain. Right. And I think that's what William's sports rental says. So that's what we're relying on to get there. Well, didn't William's sports rental said, you know, attorney's fees are definitely a separate claim. And basically that these other claims, car contribution, probably are separate claims, but we're not going to rule on that at this point. Well, what William's sports rental, the way I read what the Ninth Circuit did there was they declined to take a position on the circuit split and decide whether in the Ninth Circuit the rule is going to be the majority rule or the minority rule. And they stopped by saying, look, we've got a separate claim by way of the attorney's fees claim, so we don't have to reach the issue that the other circuits that I listed off earlier have already decided. Which is if you've got, the majority rule is if you have contribution and indemnity claims among the various joint tort feasors, then you have a multiple claimant situation. And everybody has to agree to get back to state court to protect the limitation jurisdiction of the district court. I would suggest that that's a very common sense rule. I've been doing this for my whole career, and oftentimes many of the lawyers involved have treated it as such, given how much sense it makes, because it does always protect the limitation proceeding. So I'm trying to understand from that response, do you think we need to address whether indemnity and contribution claims also create a multiple claim situation? I don't think you have to, but I think that the court should because this issue, again, we're litigating the issue now. William Sports Rental's case is litigating the issue again, and it has been for about five years. And I know of other cases that are out there within the Ninth Circuit that I'm involved in, frankly, where this issue is becoming a bigger issue and is being litigated in the district court level. So it seems that to have the Ninth Circuit take a position on it would be helpful. And it just makes a lot of sense because it ensures that the vessel owner is not going to be prejudiced in the limitation proceeding. And is it your position that unilateral stipulations can never protect a shipowner in a multiple claim situation, or that just that Loaiza's proposed stipulations are not adequate here? Well, I don't think a unilateral stipulation can ever protect the vessel owner when there's multiple claimants. Oftentimes what you see, there will be a limitation action, and there's no other joint tort feasors involved, and there's a single claimant, and that's called the single claimant exception. In those situations, a unilateral stipulation is fine, but that does not apply when we're dividing up that pie of liability, which is what, you know, that's the nightmare that I have as I sit here as the vessel owner's lawyer saying, well, if we don't have that protection and we try this case to conclusion and the trier of fact makes an allocation of fault, how is that going to be sorted out by the federal judge? And how can I be sure that those parties aren't going to take positions that are consistent with that and try to convince the federal judge that those are, for instance, race judicata, and create a situation where that privity and knowledge determination, which is one of the liability issues in the limitation action, is prejudiced. Did you want to reserve the balance of your time? Yes, I would like to reserve the balance of my time. Thank you. Thank you for affording me this opportunity. My name is Daniel Giola. I'm here on behalf of Mr. Loaiza, and may it please the court and counsel. Counsel, I'm having a little bit of a hard time hearing you. Yes. Could you keep your voice up just a bit? Yeah. Thank you. I could get closer to one of these. That's great. Sorry. Should I repeat? Okay. I said thank you for providing me this opportunity. My name is Daniel Giola. I represent Mr. Loaiza, and may it please the court. I like to not rehash stuff that's already in the briefings, and I understand kind of some of the questions and issues raised by counsel. So if there's anything that justices want to hear about, I'm sure they'll ask me, but I will address attorney fees. I've been practicing personal injury a long time in California. I'm not aware of a provision or a statute or anything that provides for the opportunity for attorney fees and personal injury claimants, some obscure situations that we're not dealing with here right now. But the precedent is here. Right. You know, there's so many circuits. I mean, all of the circuits at this point are unanimous that attorney fees in this situation, when you're looking at the Limitations Act, does consider attorney fees a separate claim. How do you counter that? Right. Well, my understanding is based on California law. I don't know with regards to other circuits whether or not they have special rules for indemnification, cross-complaints that provide for attorney fees, or we're talking about blanket situations where there's a contractual relationship between tort fees providing for attorney fees. But the question on this case decided on the facts of this case would be what attorney fees are we afraid of that would present a risk where there would be some exposure beyond the limitation value to the vessel owners. And if there is no attorney fees, if it's a hypothetical attorney fees in our case, then just because you've pled attorney fees in your prayer for complaint doesn't mean you're entitled to it. A lot of people throw it in even though there's no legal basis for attorney fees. Often it's met with a motion to strike, and it's removed. Oftentimes trial comes and goes, and they try to enforce it, and they're told there's no basis for it. I guess because you rely a lot on state law, but this we have to look at under the Limitations Act. And so I'm trying to look for any authority, and can you cite any where we're supposed to look at state law and that's going to be controlling when we're in the context of the Limitation Act? Well, we look at state law for the underlying claim for liability, and in other contexts we do look at state law. Give me a case. Give me a case. I'm on the spot. Within the Limitations Act, but that's the main reason we're here. I mean, that's unfortunately I think for you and your client what you have to reckon with, and it seems like there's overwhelming authority on the attorney fees issue that says that consider. Every circuit that's looked at it has said that's a separate claim. Yes. I actually, and not to pivot, I don't think that I don't have issue with the attorney fee provision. I'm not here to argue that attorney fees provision shouldn't be considered separate. Once it's considered separate, then that completely I think undermines. But what we'd be arguing is imaginary hypothetical attorney fees that they're never going to be entitled to under our fact pattern cannot create this illusion that there's multiple claimants when the reality is in this case there will never be an attorney fees exposure. Does that make sense? No. So in terms of- Are you talking about- Actually, I agree with Judge McKee. It doesn't make sense to me either. Are you talking about attorney fees now coming out of the parallel state court action? Right. So I guess the argument with return to attorney fees is that there will be a cross complaint between tort feasers. I'm imagining this arises in a scenario where there's some contractual relationship between those tort feasers providing them with a right to attorney fees, which I don't understand there to be here. If there was a case where there's a contractual situation, then one of the tort feasers may prevail on their cross complaint and may be entitled to an award of attorney fees, which would be separate, which the problem is it becomes a mathematical problem because it puts you over the limitations action. So I'm kind of simplifying in my own mind. That's how I understand it. But in terms of setting a precedent, the court can set a precedent and the precedent could be more specific to the fact that in order to be a plaintiff in limitation and invoke this attorney fee issue as opposed to having it, for lack of a better word, be a red herring, there needs to actually be in the underlying case a viable attorney fee claim and not just a prior and a complaint. Let me try it this way. Are you saying that if we were to look at that, you know, and following up on Chief Judge McGeer's comment about the other circuit's rulings, are you saying that you think if we were to drill down on those other rulings, those other rulings would present circumstances where there was a state law reason that provided for fees that is not present here? Is that what you're saying? So I tried to do this last night before I was preparing for this and figure out how those attorney fees provisions were in the different scenarios. I didn't come across the California case, and I can't speak for other states. So you're not answering my question. And maybe I didn't ask it very well. But Chief Judge McGeer has presented you with a lot of authority, circuit court authority, right, on this issue. And it seems to me what you're arguing in a roundabout way is that those cases are distinguishable because they involved situations where in the parallel state court action, there was a non-hypothetical exposure to fees that we don't have here. But I'm not sure I'm understanding you, so I'm trying to check to see if that's what you're telling us. I don't want to misrepresent that I've read every single case, and I know that to be the fact. But that is my – the best way to say it appropriately is, yes, that's my feeling on how I read these. Because when I read them, there seemed to be a concern for attorney fees in each of those cases that was beyond they pleaded in their complaint. Does that make sense? Yes. Because they actually put credibility to those attorney fees claims, and they relied on it. They didn't just say, you added the magic words in your pleading prayer, and we're done. Does that make sense? I think you answered my question. Yeah. So what about the indemnity and contribution claims? The indemnity and contribution claims, as counsel noted, is not germane to the analysis that we're doing here. I don't – in terms of whether or not we should adopt the majority or not or go with the minority, as it's been said, counsel mentioned it's not germane to the issues here. It would be an advisory decision. If the court wants to take a route, they could. I think for us it was – it's the In re Moran case that they cited too in their opening brief. I think it's on the third page where the court – and I could quote from it, but effectively on 388, continuing on 389, they explain – I'll paraphrase because it's a little long to read. But they basically say we actually have to look at the facts. We actually have to look. Is there an actual risk where these demands will exceed the limitation action? Because if it's all imaginary, we don't – we're not doing this just because there's a hypothetical. I don't know. I don't – because I want to give you every opportunity. This is a very serious case, a serious injury to your client. But I'm trying to figure out what you mean by imaginary. I mean a claim is an asserted claim. People think they have a claim. Whether they do or they don't, ultimately the process has to play through. I don't think we figure out – or there's a way here to say, oh, that's imaginary. I thought in your briefs what you were arguing that that was – like other arguments have been made on these indemnity and contribution claims is that they're derivative. But that's been rejected by a lot of the recent courts to look at this issue. Because I think the bottom line for a lot of the courts that have looked at these kind of claims under the Limitations Act is that if there's some risk of exposing the shipowner to excess liability in the federal admiralty proceeding, then that's going to be considered a separate claim. And I wanted to give you every opportunity to argue that here and to help me understand your position. And I apologize. I meant – and I should be more precise with my words. I meant in the context, for example, of the attorney fee claims. An attorney fee prayer and a complaint without a statutory, contractual, or legal basis is not valid, meaning that you can pray for attorney fees, but you wouldn't get it unless you could actually show that you're entitled to it based on statute, contract, or otherwise. So that's why I meant in terms of imaginary, meaning I just put it in there, but I don't have anything to support it. And I should be more precise with my words. With regards to the indemnity issues, there's been two approaches. And I think that the approach from the Williams case and the other districts that have not – that consider it derivative, I think it's because they actually drill down more into the risk of exposure instead of having this standard rule where indemnity claims automatically are multiple claimant, contribution claims are – I think that's the difference, is that the approach here is more of a factual approach of what actually in that particular case is going on. And it gives the judge in the district court the discretion on a case-by-case basis to see whether or not, based on the facts presented there, is a risk. And that is the benefit of the minority approach. Whereas if you adopt the blanket approach that the more circuits have adopted, I granted, where it would automatically be considered a separate claim, multiple party, gets you back into fed court, deprives you of your jury trial in state court, then it takes away that discretion from the district court judges to be able to look at the case that they actually have in front of them on their docket and decide, based on the facts of that case, whether or not this one should be sent out to state court. Because I understand that there's a cross-complaint, and in the cross-complaint they've asked for indemnity, contribution, or attorney fees. But I know, because I practice this law of this state with this is my file, this is my case on my docket, and I know there's no risk, and I don't have to keep it in the district court. And that becomes the benefit of not going, at least in my mind. I'm sure there's other arguments that are in the brief that the court has read. But in my mind, that would be the reason not to adopt that rule, because we would be depriving the state court of the discretion of actually looking at what's going on in their case before them. But that discretion only works one way, right? Because it always puts the person that's subject to the protections of the federal law at some risk. If the district court turns out to be wrong, you're saying the district court should forecast, right? But the district court is an all-knowing. So if the district court turns out to be wrong, then the people that are supposedly protected by this federal law end up not being protected. So, you know, it's understandable why you'd be arguing in the position that you're in for that, because it never puts your side at risk. It's all the risk of that sort of approach falls on the district court being wrong falls on the people that are supposedly protected. Well, if we use the example of attorney fees, the district court judge can look at the file and know the facts and know the cause of action for negligence. In this case, it does not provide you for an opportunity for attorney fees, nor does the cross-complaint for indemnity. You haven't pled that you have a contract that provides for it. But I guess what I'm getting at is there's the fact that it's asymmetrical risk, and you're basically putting – but it's also just that you're putting a lot of a burden on the district court to have to, like, figure out both on the attorney's fees, you know, is there any real chance of attorney's fees? And is there any real chance that there might be another claimant here who is going to push us above the limit? The district court's having to figure that all out on the front end, which I'm guessing is why the majority of courts have just said let's just make a bright-line rule, partly just probably to make it easier for the district court. I know my time is up, so – You still have a minute and 30 seconds. I guess the burden needs to be compared to your depriving a claimant, an injury claimant victim, of their right to a jury trial, which again in the case law seems to be something that we want to preserve under the safety suitors clause. And with regards to the burden, I would surmise that the burden is not any more than having the case remain on their docket and having to litigate the whole case where they would have to make all these decisions anyways. So I don't know how extensive that burden would be. I think in terms of, again, to use a simple example of the attorney fee provision, the burden is just so much as understanding what the causes of action are and whether or not there was an indemnity contract between the parties or some type of provision that would give them a right to attorney fees. It's very easy to ascertain that. It could be viewed from the pleadings. You would have to plead the contract and plead your attorney fees to properly have pledged your cause of action for indemnification to be entitled to attorney fees. So I don't think it would be much of a burden in that regard if you use that example. In terms of the derivativeness, again, that could also be resolved by the stipulation. And if you want me to address the stipulation requiring that it be unanimously entered, again, we don't want to allow one holdout co-tort feeser to deprive the victim of their right to attorney fees. So that becomes the problem where we've seen in the case law they've provided it, a stipulation can be worded to allow the protection. And I'll leave with one thing, I'm sorry, is as far as the priority thing they mentioned, again, the attorney fees given priority means that we'll take the attorney fees off the top and then Loaiza, for example, would agree to accept up to what's left. That type of a stipulation unilaterally will give the same protection as if the other. It doesn't require it. It's just like a foreclosure situation. I'm second in line on the lien. I'll agree to be second and take what's left over after the first takes priority. So that answers that question briefly. All right. Thank you. Thank you. A couple quick points. First, as it relates to the attorney's fees claim, an attorney's fees claim has been made by S&K Dive against our clients. We have to defend that claim. And the law is unanimous in support of the position that that requires, the stipulations that were discussed but that we've suggested here. Even in the cases, even in the circuits that have followed the minority rule, they've still acknowledged the need, for instance, the Sixth Circuit and the S&C shipping case, when there was an attorney's fees claim, in addition to the contribution and indemnity claims, they required all parties to stipulate. The second point, real quick, is there is no place for state law in this analysis. Limitation of Liability Act and Supplemental Admiralty Rule F occupy the maritime law on this point. Those are federal statutes. That's how we analyze when there might be a need for state law to supplement admiralty laws. A, is there a statute that occupies that space? Here, the answer is yes, twice. If we're not looking at a statute, then the question is, is there general maritime law on point? Which, yeah, actually there is general maritime law on point at the circuit level in almost every circuit. I didn't count them up, but almost every circuit. One has a majority rule, and then there's a couple with a minority rule, but that law governs. And only if there was ambiguity and there wasn't a general maritime law rule on point would we look to state law on any of those issues. This is a federal issue that needs to be decided at the federal level by the circuit court interpreting federal law. And that's all I have. And I would ask that the court reverse the district court's decision on the terms that we've suggested. Thank you very much. Thank you both very much for your oral argument presentations here today. The case of Live Life Mayavida LLC versus Cruising Yachts and Edward Loaiza is now submitted.
judges: MURGUIA, CHRISTEN, VANDYKE